J-S04005-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| STEVEN WILLIAM SHAWGO, | : | |
| | : | |
| Appellant | : | No. 1729 WDA 2014 |

Appeal from the Judgment of Sentence April 29, 2014,
Court of Common Pleas, Venango County,
Criminal Division at No. CP-61-CR-0000222-2013

BEFORE:  BOWES, OLSON AND STRASSBURGER*, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED JANUARY 21, 2016**

Steven William Shawgo appeals from the judgment of sentence of ten to twenty years imprisonment, which was imposed following his convictions for robbery and theft by unlawful taking.  For the reasons that follow, we affirm.

On December 11, 2011, as Kaleigh Zerres was closing the Dollar General Store in Cranberry Township, Venango County, a man wearing a mask and hooded sweatshirt placed a gun in her face and threatened to shoot her if she did not give him money from the cash register.  N.T., 3/17/14, at 34-37.  Ms. Zerres removed $283 from the cash register and gave it to the assailant, who then fled.  *Id*. at 37-38; N.T., 3/18/14, at 29. Store video equipment captured the robbery, which transpired over seventeen seconds.  N.T., 3/18/14, at 30.

_____

*Retired Senior Judge assigned to the Superior Court.

At approximately 4:00 p.m. on December 18, 2011, a man wearing a mask and hooded sweatshirt entered the Kwik-Fill convenience store in Cranberry Township, Venango County, and aimed a gun at the station attendant, Dennis Kucera. N.T., 3/17/14, at 70-72. Pursuant to the robber's demand, Mr. Kucera handed over approximately $500, two packs of cigarettes, and a lighter. *Id*. at 72; N.T., 3/18/14, at 74. As the masked man left the store, Mr. Kucera saw him enter a 2000-2002 orange Dodge Neon with a Pennsylvania license tag that included the letters "H" and "K" or "M" and "K."[1] *Id*. at 68-72. Mr. Kucera attributed his ability to identify the make and model of the vehicle to his vast knowledge of cars, indicating that he had subsequently enrolled in the NASCAR Technical Institute in North Carolina. *Id*. at 76. Security cameras at the Kwik-Fill captured this robbery on video that was viewed by the jury. *Id*. at 85-92.

On May 30, 2013, the Commonwealth charged Appellant with two counts each of robbery and theft by unlawful taking for the holdups at the Dollar General store and the Kwik-Fill gas station. Although the mask prevented Ms. Zerres and Mr. Kucera from testifying at trial that Appellant was the perpetrator, the Commonwealth offered circumstantial evidence to identify him. Mary Jo Anderson testified that Appellant was renting a room in the home she owned with her husband in December 2011. On occasion,

---

[1] At the preliminary hearing in May 2013, Mr. Kucera testified that he saw an "H" and "K." N.T., 3/17/14, at 82. At trial in March 2014, Mr. Kucera testified that the license tag included an "M" and "K." *Id*. at 78.

they would permit Appellant to borrow their car, which was a 2000 burnt orange Dodge Neon. *Id*. at 106-08. Although Ms. Anderson could not remember exact dates, she testified that, on occasion, Appellant failed to return the vehicle in time for her to go to work. When this occurred, she would "burn his phone" to get in touch with him. *Id*. at 110. Trooper Brian O'Toole testified that Appellant's cell phone records revealed as many as thirty text messages and numerous phone calls between him and Ms. Anderson on December 18, 2011, the date of the Kwik-Fill robbery.[2] N.T., 3/18/14, at 74. Mr. Kucera later identified the Andersons' orange Neon as the vehicle in which he witnessed the robber flee from the Kwik-Fill. N.T., 3/17/14, at 76. The Pennsylvania license tag on the vehicle included the letters "H" and "X," similar to the "H" and "K" that Kucera testified at the preliminary hearing he had observed. *Id*. at 82; N.T., 3/18/14, at 34-35.

Ms. Anderson also provided police with a gray hooded sweatshirt belonging to Appellant that she found stuffed in a box in the basement of her home. N.T., 3/17/14, at 114. Kimberly Hale, Appellant's friend, testified that she advised the police that a pair of tennis shoes belonging to Appellant could be found at 41 East Bissell Street. N.T., 3/17/14, at 143. At

---

[2] Similarly, Jodi Davis, an acquaintance of Appellant, testified that in or around December 2011, she loaned him her car. She also could not remember a specific date, but did say that he was delinquent in returning it to her and that she had to call him several times to retrieve it. N.T., 3/17/14, at 129-30. Trooper O'Toole testified that phone records showed multiple texts and calls between Ms. Davis and Appellant on December 11, 2011, the date of the Dollar General robbery. N.T., 3/18/14, at 73-74.

that location, the police found a pair of white tennis shoes consistent with the shoes worn by the perpetrator as depicted on the video of the Kwik-Fill robbery. N.T., 3/18/14, at 55-59.

Finally, the Commonwealth offered the testimony of Faron Tucker, who met Appellant in the Venango County Jail while he was awaiting sentencing on robbery convictions. *Id*. at 97. Mr. Tucker testified that Appellant admitted to him, *inter alia*, that he had committed the Dollar General and Kwik-Fill robberies while wearing a mask and hooded sweatshirt, that he had been living with someone who owned a Dodge Neon at the time of the robbery, and that he had confessed his crimes to Ms. Hale. *Id*. at 99-108.

On March 20, 2014, a jury found Appellant guilty of robbery and theft by unlawful taking in connection with the Kwik-Fill gas station, but not guilty of the charges connected to the Dollar General robbery. The trial court sentenced Appellant to ten to twenty years incarceration on the robbery conviction[3] and imposed no additional sentence on the theft conviction due to merger. Appellant's post-sentence motions were denied.

On appeal, Appellant presents two issues for our consideration and determination:

---

[3] This sentence reflects a mandatory minimum pursuant to 42 Pa.C.S. § 9714, as the robbery conviction constituted a third conviction for a crime of violence. N.T., 4/29/14, at 21-23. Application of this mandatory minimum is not constitutionally infirm. **Commonwealth v. Miller**, 102 A.3d 988, 995 n.5 (Pa.Super. 2014) (**Alleyne v. United States**, 133 S.Ct. 2151 (2013) allows for mandatory minimum sentencing based on fact of prior conviction).

> 1. Does a prosecutor's false statements in closing argument regarding the contents of a criminal complaint and affidavit of probable cause constitute prosecutorial misconduct when said statement was made with the intention to and had the effect of improperly bolstering the credibility of a witness?
>
> 2. Was the guilty verdict for robbery and theft by unlawful taking against the weight of the evidence when the prosecution relied on a mishmash of weak circumstantial items to connect [Shawgo] to the crime?

Appellant's brief at 4.

For his first issue on appeal, Appellant contends that false statements during the Commonwealth's closing argument amounted to prosecutorial misconduct requiring a new trial. In support thereof, he offers the following argument. Mr. Tucker testified that Appellant told him that he parked his car across the street from the Kwik-Fill, N.T., 3/18/14, at 105, but all of the witnesses at trial testified that the robber parked his car in front of the Kwik-Fill. Through cross-examination of Mr. Tucker as well as the direct testimony of defense witness Tyler Rozanski, Appellant attempted to prove that while in the Venango County Jail, Mr. Tucker used his access to Appellant's legal papers to obtain information about the charges. *Id*. at 112-14, 121-24. As set forth in the affidavit of probable cause attached to the criminal complaint, a witness who did not testify at trial had indicated that Appellant parked his car across the street prior to entering the Kwik-Fill. During the Commonwealth's closing argument, the prosecutor admitted that

Mr. Tucker had been mistaken about the car being parked across the street, but denied that Mr. Tucker could have obtained this information from Appellant's legal paperwork because it was not contained in those documents. Closing Argument, 3/20/14, at 13, 23 ("It didn't come from the paperwork … [b]ecause in the paperwork it's never been suggested the car was parked across the street.").

We find that Appellant failed to preserve this issue for appellate review because his counsel did not assert a contemporaneous objection to the prosecutor's above-referenced remarks. As our Supreme Court has held repeatedly, the lack of a contemporaneous objection constitutes a waiver of any challenge to a prosecutor's closing statement. *Commonwealth v. Rivera*, 983 A.2d 1211, 1229 (Pa. 2009); *Commonwealth v. Powell*, 956 A.2d 406, 423 (Pa. 2008); *Commonwealth v. Butts*, 434 A.2d 1216, 1219 (Pa. 1981). Counsel for Appellant raised prosecutorial misconduct for the first time in a post-sentence motion. As a result, the issue is waived.

Next Appellant argues that the jury's verdict was against the weight of the evidence. Our standard of review in this context is extremely limited:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. *[Commonwealth v.] Widmer*, 744 A.2d [745,] 751–52 [Pa. 2000]; *Commonwealth v. Brown*, [] 648 A.2d 1177, 1189 ([Pa.] 1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. *Widmer*, 744 A.2d at 752. Rather, "the role of the trial judge is to determine that

'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" *Id*. [] at 752. It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Brown*, 648 A.2d at 1189.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. *Brown*, 648 A.2d at 1189. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. *Commonwealth v. Farquharson*, [] 354 A.2d 545 ([Pa.] 1976). One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence.

*Widmer*, 744 A.2d [745,] at 753.

*Commonwealth v. Antidormi*, 84 A.3d 736, 758 (Pa.Super. 2014) (quoting *Commonwealth v. Clay*, 64 A.3d 1049, 1054–55 (Pa. 2013)).

Appellant contends that the jury's verdict was based upon the questionable testimony from Mr. Tucker and a "mishmash of weak circumstantial items with minimal connection to [Appellant]." Appellant's brief at 10. These items included the white tennis shoes that were not his

- 7 -

size and that bore no identifying marks, and the gray hooded sweatshirt, which was nondescript and that could have been purchased in any department store. *Id*. at 10-11. Finally, Appellant argues that Mr. Kucera correctly identified only one digit of the license plate number and could not provide any unique characteristics of the vehicle other than its make and model. According to Appellant, the Andersons' Dodge Neon would get stuck in second gear, making it an unsuitable getaway vehicle, and the police never checked PennDOT records for other similar vehicles in the area. *Id*. at 11.

We conclude that the trial court did not abuse its discretion in denying Appellant's weight claim. With respect to Mr. Tucker's credibility, it is not this Court's function to overturn a jury's credibility determinations. *See*, *e.g.*, *Commonwealth v. Page*, 59 A.3d 1118, 1130 (Pa.Super. 2013) ("A determination of credibility lies solely within the province of the factfinder."). As for Appellant's attempt to undermine the weight of the Commonwealth's evidence identifying him as the masked perpetrator of the robberies, the jury was free to believe all, part, or none of the evidence. *See*, *e.g.*, *Commonwealth v. Blackham*, 909 A.2d 315, 320 (Pa.Super. 2006). Ms. Hale and Mr. Tucker linked Appellant to the white tennis shoes, and Ms. Anderson testified that Appellant had complete access to the basement where the gray hooded sweatshirt was found. The jury was also within its province to rely upon Mr. Kucera's knowledge of automobiles in crediting his

identification of the Andersons' burnt orange Dodge Neon as the car he saw speeding away from the Kwik-Fill robbery. Appellant's counsel thoroughly cross-examined the Commonwealth's witnesses on these points and called defense witnesses to dispute their accounts.[4]

Finally, we note that while the jury found Appellant guilty of the Kwik-Fill robbery, it found him not guilty of the same crime at the Dollar General store. Thus, it is clear that the jury critically reviewed and carefully weighed all of the evidence presented. The trial court plainly did not abuse its discretion in finding that the jury's verdict was not so contrary to the evidence as to shock one's sense of justice.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/21/2016

---

[4] Appellant's fiancée, Jeanette Turner, testified as an alibi witness for Appellant, placing him elsewhere on December 18, 2011, the date of the Kwik-Fill robbery. N.T., 3/18/14, at 16-24.